ETHAN P. SCHULMAN (No. 112466)
DIPANWITA DEB AMAR (No. 184779)
LONG XUAN DO (No. 211439)
MATT R. SCHULTZ (No. 220641)
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:    415/434-1600
Facsimile:    415/217-5910

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTIAN LEGAL SOCIETY CHAPTER OF UNIVERSITY OF CALIFORNIA, HASTINGS COLLEGE OF THE LAW, a/k/a HASTINGS CHRISTIAN FELLOWSHIP, a student organization at University of California, Hastings College of the Law,<br><br>                Plaintiff,<br><br>    v.<br><br>MARY KAY KANE, in her official capacity as Chancellor and Dean of the University of California, Hastings College of the Law; JUDY CHAPMAN, in her official capacity as Director of Student Services for University of California, Hastings College of the Law; and MAUREEN E. CORCORAN, EUGENE L. FREELAND, CARIN T. FUJISAKI, JOHN T. KNOX, JAN LEWENHAUPT, JAMES E. MAHONEY, BRIAN D. MONAGHAN, BRUCE L. SIMON, JOHN K. SMITH, and TONY WEST, in their official capacities as the Board of Directors of University of California, Hastings College of the Law,<br><br>                Defendants. | No. C 04 4484 JSW<br><br>Action Filed: October 22, 2004<br><br>NOTICE OF MOTION AND MOTION TO DISMISS DIRECTOR DEFENDANTS AND TO DISMISS COUNTS III, IV, AND VI OF VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:       April 1, 2005<br>Time:      9:00 a.m.<br>Judge:     Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

| | Page |
|---|---|
| NOTICE OF MOTION AND MOTION TO DISMISS | 1 |
| SUMMARY OF ARGUMENT | |
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
| INTRODUCTION | 2 |
| STATEMENT OF FACTS | 3 |
| ARGUMENT | 7 |
|     I. HASTINGS' DIRECTORS ARE IMPROPERLY NAMED AS DEFENDANTS. | 7 |
|     II. HASTINGS' NONDISCRIMINATION POLICY DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE. | 9 |
|     III. THE NONDISCRIMINATION POLICY IS NOT VOID FOR VAGUENESS. | 11 |
|     IV. HASTINGS' NONDISCRIMINATION POLICY DOES NOT VIOLATE EQUAL PROTECTION. | 12 |
|         A. Hastings Has Not Treated CLS Differently Than Any Other Registered Student Organization. | 13 |
|         B. CLS Has Not Alleged That Hastings Acted With Discriminatory Intent. | 14 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarado v. San Jose*, 94 F.3d 1223 (9th Cir. 1996) .......... 10

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) .......... 13, 14

*Bob Jones University v. U.S.*, 461 U.S. 574 (1983) .......... 10

*Brown v. Woodland Joint Unified School Dist.*, 27 F.3d 1373, 1380 (9th Cir. 1994) .......... 10

*Christian Gospel Church, Inc. v. San Francisco*, 896 F.2d 1221 (9th Cir. 1990) .......... 14

*City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985) .......... 13

*City of Memphis v. Greene*, 451 U.S. 100 (1981) .......... 14

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .......... 11

*Green v. Tucson*, 340 F.3d 891 (9th Cir. 2003) .......... 13

*Grove v. Mead School Dist. No. 354*, 753 F.2d 1528 (9th Cir. 1985) .......... 10

*Harris v. McRae*, 448 U.S. 297 (1980) .......... 10

*Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044 (9th Cir. 2003) .......... 12

*Hispanic Taco Vendors v. Pasco*, 994 F.2d 676 (9th Cir. 1993) .......... 14

*Lee v. Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .......... 14

*Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992) .......... 8

*McGowan v. Maryland*, 366 U.S. 420 (1960) .......... 9, 10

*Murphy v. Shaw*, 195 F.3d 1121 (9th Cir. 1999), *rev'd on other grounds*, 532 U.S. 223 (2001) .......... 12

*NASD Dispute Resolution v. Judicial Council of Cal.*, 232 F. Supp. 2d 1055 (N.D. Cal. 2002) .......... 8

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) .......... 8

*Rounds v. Oregon State Bd. of Higher Educ.*, 166 F.3d 1032 (9th Cir. 1999) .......... 8

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) .......... 14

*United States v. Makowski*, 120 F.3d 1078 (9th Cir. 1997) .......... 11, 12

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) .......... 13

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes and Constitutional Provisions**

Cal. Const., Art. IX, §9     3

Cal. Educ. Code §§92200-92215     3

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on April 1, 2005, at 9:00 a.m., in Courtroom 17 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 16th Floor, San Francisco, California 94102, Defendants Mary Kay Kane, in her official capacity as Chancellor and Dean of the University of California, Hastings College of the Law ("Hastings"); Judy Chapman, in her official capacity as Hastings' Director of Student Services; and Maureen E. Corcoran, Eugene L. Freeland, Carin T. Fujisaki, John T. Knox, Jan Lewenhaupt, James E. Mahoney, Brian D. Monaghan, Bruce L. Simon, John K. Smith, and Tony West, in their official capacities as Hastings' Board of Directors (the "Directors") (collectively "Defendants") will move the Court to dismiss the Directors as Defendants and to dismiss Counts III, IV, and VI of the Verified Complaint for Declaratory and Injunctive Relief (the "Complaint").

This motion will be brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds:  (1) The individual members of Hastings' Board of Directors are improperly named as Defendants because this Court can grant complete relief in their absence against Hastings' Director of Student Services and Dean, who are charged with enforcement of the Policy on Nondiscrimination;  (2) Count III of the Complaint fails to state a claim upon which relief can be granted for violation of the Establishment Clause of the First Amendment because Hastings' Policy on Nondiscrimination does not prefer one religious sect over another;  (3) Count IV of the Complaint fails to state a claim upon which relief can be granted for violation of the Due Process Clause of the Fourteenth Amendment because Hastings' Policy on Nondiscrimination is not void for vagueness; and (4) Count VI of the Complaint fails to state a claim upon which relief can be granted for violation of the Equal Protection Clause of the Fourteenth Amendment because it does not allege that Plaintiff was treated differently than other similarly situated student groups or that Defendants acted with an intent to discriminate against Plaintiff.

## SUMMARY OF ARGUMENT

This is an action by the Christian Legal Society ("CLS") against officials of the Hastings College of the Law of the University of California. Hastings' Policy on Nondiscrimination prohibits discrimination "on the basis of race, color, religion, national origin, ancestry, disability, age, sex or sexual orientation." CLS admits that it discriminates on the basis of both religion and sexual orientation in its membership and officers, and seeks declaratory and injunctive relief against application of the Policy.

CLS has improperly named as Defendants all ten members of Hastings' Board of Directors. Whether parties are properly named as defendants in an *Ex parte Young* case turns on whether they have authority to *enforce* the law as to which plaintiffs seek relief, not on whether they enacted the law. *NASD Dispute Resolution v. Judicial Council of Cal.*, 232 F. Supp. 2d 1055, 1064-65 (N.D. Cal. 2002). Hastings' Dean and Director of Student Services are charged with enforcing the Policy on Nondiscrimination, and are the only proper defendants. The individual Directors should be dismissed. *See* Part I, *infra*.

Count III alleges that Hastings' Policy on Nondiscrimination violates the Establishment Clause of the First Amendment because it "prefers religious sects that condone homosexual conduct over more orthodox religious sects that believe homosexual conduct is impermissible." However, "a regulation does not violate the Establishment Clause merely because it 'happens to coincide or harmonize with the tenets of some or all religions.'" *Bob Jones University v. U.S.*, 461 U.S. 574, 604 n.30 (1983). *See* Part II, *infra*.

Count IV of the Complaint does not state a claim that Hastings' Policy is void for vagueness because it is sufficiently clear that persons of ordinary intelligence can determine what is prohibited, as CLS itself concedes in the verified Complaint. *See* Part III, *infra*.

Count VI does not state a claim for violation of the Equal Protection Clause because it does not allege that Hastings has treated CLS differently than any other similarly situated student organization or that Defendants intended to discriminate against it. *Lee v. Los Angeles*, 250 F.3d 668, 686-87 (9th Cir. 2001). *See* Part IV, *infra*.

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

This is an action by a student chapter of the Christian Legal Society ("CLS"), a national organization, against officials of the Hastings College of the Law of the University of California ("Hastings" or the "College"). Hastings, like thousands of other public (and private) educational institutions across the country, has long had a Policy on Nondiscrimination ("Policy"), which applies to all College constituencies and activities including administration, faculty, student governments, College-owned student residence facilities and College-sponsored programs. The Policy covers admissions, access and treatment in Hastings-sponsored programs and activities. It prohibits discrimination "on the basis of race, color, religion, national origin, ancestry, disability, age, sex or sexual orientation."

CLS—alone among more than fifty registered student organizations at Hastings during the current academic year—claims an absolute constitutional right to an exemption from that Policy that would entitle it explicitly to discriminate on the basis of both religion and sexual orientation in its membership and officers. When Hastings declined to grant it such an exemption, CLS filed this lawsuit.

CLS requires any student who seeks to join it or become on of its officers to sign the national Christian Legal Society's written Statement of Faith. Compl. ¶3.5.[1] CLS admits that it explicitly discriminates in selecting its membership and officers on the basis of both

---

[1] By that Statement, all members and officers must agree to and affirm as follows:
Trusting in Jesus Christ as my Savior, I believe in:
- One God, eternally existent in three persons, Father, Son and Holy Spirit.
- God the Father Almighty, Maker of heaven and earth.
- The Deity of our Lord, Jesus Christ, God's only Son conceived of the Holy Spirit, born of the virgin Mary; His vicarious death for our sins through which we receive eternal life; His bodily resurrection and personal return.
- The presence and power of the Holy Spirit in the work of regeneration.
- The Bible as the inspired Word of God. (Compl. ¶3.7 & Ex. B at 1)

religion and sexual orientation. It interprets its Statement of Faith "to require that officers adhere to orthodox Christian beliefs based on the authority of the Bible." *Id.* ¶3.8. Thus, according to the CLS' verified complaint, "[a] person who engages in homosexual conduct or adheres to the viewpoint that homosexual conduct is not sinful would not be permitted to become a member or serve as an . . . officer." *Id*.

By this action, CLS seeks this Court's imprimatur on its discriminatory practices. In particular, CLS claims an absolute right under the Constitution to hold prayer meetings and other religious activities on College premises, with the right to use College media (such as newsletters and websites), supported by College-collected funds including a mandatory student activity fee paid by all Hastings students, and the right to use the Hastings name and logo in publicizing those activities and in fund-raising. It seeks injunctive relief compelling Hastings to recognize it as a registered student organization and to confer these benefits on it, notwithstanding its admitted discrimination in admitting members and selecting officers.

The extreme relief CLS seeks in this action has never been granted by any court. It threatens to force Hastings and other public institutions to subsidize student organizations that discriminate on the basis of religion, sexual orientation, and quite possibly other protected grounds such as race or sex. This initial motion to dismiss is directed to certain claims that are readily susceptible to dismissal on the face of the Complaint.

## STATEMENT OF FACTS

Hastings is a public law school located in San Francisco and is part of the University of California. Compl. ¶3.12.[2] It permits students to form and register student organizations. *Id.* ¶3.13. Student groups at Hastings must be recognized as a "registered student organization" in order to use College facilities for meetings and to receive funding. *Id.* ¶3.15. Additional benefits of forming a registered student organization include: (a) use of designated bulletin boards for announcements of interest to organization members and the student body; (b) use of the Student Information Center for distribution of organization

---

[2] *See* Cal. Const., Art. IX, §9; Cal. Educ. Code §§92200-92215.

1  materials to the Hastings community; (c) listing on the Office of Student Services' website
2  listing of registered student organizations (*id.* Ex. C); (d) participation in the Student
3  Organizations' Faire; (e) access to various services offered by the Office of Student
4  Services; (f) access to Hastings' publications, including the "Hastings Weekly"; (g)
5  placement of organization materials in first-year law student orientation packets; (h) listing
6  organization announcements on classroom chalkboards; (i) placement of announcements in
7  the Student Event Calendar, delivered weekly to Hastings students via email; and (j)
8  eligibility to enter into a license agreement with Hastings for use of the College name. *Id.*

Hastings requires student organizations to agree to and abide by the Policies and Regulations Applying to College Activities, Organizations and Students. *Id.* ¶3.16 & Ex. D. Among the Policies with which registered student organizations must comply is the Policy on Nondiscrimination. Compl. ¶3.17 & Ex. E at 69 ¶20.00. That Policy provides:

> The College is committed to a policy against legally impermissible, arbitrary or unreasonable discriminatory practices. All groups, including administration, faculty, student governments, College-owned student residence facilities and programs sponsored by the College, are governed by this policy of nondiscrimination. The College's policy on nondiscrimination is to comply fully with applicable law.
>
> The University of California, Hastings College of the Law shall not discriminate unlawfully on the basis of race, color, religion, national origin, ancestry, disability, age, sex or sexual orientation. This nondiscrimination policy covers admissions, access and treatment in Hastings-sponsored programs and activities. (*Id.*)

Plaintiff CLS is an unincorporated student organization at Hastings and a local chapter of a national religious professional membership organization, the Christian Legal Society. *Id.* ¶2.1.[3] The Christian Legal Society is "a nationwide association of Christian lawyers, law students, law professors, and judges." *Id.* ¶3.1  Its stated purposes include "providing a

---

[3] Plaintiff also refers to itself in the Complaint as the Hastings Christian Fellowship or HCF. The Hastings Christian Fellowship formerly was a distinct student organization at Hastings that, unlike CLS, did not discriminate against non-Christian or gay students. Because CLS acknowledges that it is an affiliated local chapter of the national Christian Legal Society, and has adopted verbatim the Constitution and Statement of Faith of that organization, we refer to it as such.

means of society, fellowship, and nurture among Christian lawyers; promoting justice, religious liberty, and biblical conflict resolution; encouraging, discipling, and aiding Christian law students; and encouraging lawyers to furnish legal services to the poor." *Id.* It maintains attorney and law student chapters across the country. *Id.*

The Hastings chapter of the CLS is governed by a chapter constitution, which is a form document supplied by the national Christian Legal Society. *Id.* ¶3.4 & Ex. B. The chapter constitution takes effect when the CLS Executive Director executes its application for recognition. *Id.*, Article XI. Here, the chapter constitution and application were executed by three Hastings students on September 10, 2004, and were accepted by the CLS Executive Director on September 20, 2004. *Id.* Ex. B.

Article II of the chapter constitution sets forth CLS's mission and purposes, which are pervasively religious:

- Cultivating spiritual growth through communal prayer, fellowship, and worship; learning to share one's faith; and devotional study of the Bible and classic Christian works.

- Showing the love of Christ to the campus community and the community at large by proclaiming the gospel in word and in deed, such as through a life of integrity and charitable good works; as Martin Luther put it, "to be as Christ to our neighbor."

- Addressing the question, "What does it mean to be a Christian in law?" that is, learning to submit every aspect of one's calling in the legal profession to the Lordship of Jesus Christ. (*Id.* Ex. B at 1, Article II)

*See also id.* ¶3.9 (summarizing CLS's "mission").

All members of the Christian Legal Society, including student members, "must sign a Statement of Faith indicating that the member holds certain Christian viewpoints commonly regarded in both the Roman Catholic and Protestant evangelical traditions as orthodox." *Id.* ¶3.2. That Statement of Faith is expressly incorporated in the CLS New Member Application, which states, "All applicants/members must sign this Statement of Faith." *Id.* & Ex. A.

CLS admits that it interprets this Statement of Faith to prohibit both non-Christians and gays from becoming members or officers. "[CLS] interprets its Statement of Faith to require

that officers adhere to orthodox Christian beliefs based on the authority of the Bible, including the Bible's prohibition of sexual conduct between persons of the same sex. A person who engages in homosexual conduct or adheres to the viewpoint that homosexual conduct is not sinful would not be permitted to become a member or serve as [a CLS] officer." *Id.* ¶3.8; *see also id.* ¶3.11 ("Individuals who refuse to adhere to [CLS's] Statement of Faith are not permitted to be members or officers"). While the chapter constitution contains an "Equal Opportunity and Equal Access" provision that prohibits it in all aspects of its activities from discriminating "on the basis of age, disability, color, national origin, race, sex, or veteran status" (*id.* Ex. B at 2, Article 4.2), that provision makes no mention of discrimination on the basis of religion or sexual orientation. To the contrary, alone among more than fifty registered student organizations at Hastings this academic year (*id.* ¶3.14 & Ex. C), CLS explicitly claims the right and intent to discriminate on both grounds.

In early September 2004, CLS submitted its constitution and registration form to Hastings' Director of Student Services, Defendant Judy Chapman, for review of its registration status. *Id.* ¶4.1. CLS informed Hastings that it did not intend to comply with the Policy on Nondiscrimination in that, "consistent with a Biblically orthodox faith, . . . it would still consider religion and sexual orientation in the selection of officers and members." *Id.* ¶4.2.

On October 1, 2004, in response to a demand letter from CLS, Hastings informed CLS that "under federal and state mandates, the College is prohibited from supporting any program or activity that would violate the civil rights of any [of] our students." *Id.* ¶4.5 & Ex. F. Accordingly, Hastings informed CLS that "to be one of our student-recognized organizations, CLS must open its membership to all students irrespective of their religious beliefs or sexual orientation, as it has in the past." *Id.* Hastings further indicated that if CLS wished to form independently the College would allow it to use Hastings facilities for its meetings and activities, but it would be "precluded from utilizing student fees to fund its activities until CLS bylaws comport with the Hastings nondiscrimination compliance code." *Id.* On October 12, 2004, CLS received an email informing it that the $250.00 in student

activities funds set aside for its officers to travel to the Christian Legal Society's National Conference had been withdrawn. *Id.* ¶4.6. CLS alleges that since receiving the October 1, 2004 letter, it has been denied access to classroom chalkboards, bulletin boards, and other channels of communications in order to announce its meetings or recruit members at Hastings. *Id.* ¶4.7.

Based on these allegations, CLS seeks to state six claims for relief. It seeks a declaration that Hastings' Policy on Nondiscrimination is unconstitutional facially and as applied against it, and injunctive relief enjoining Defendants from requiring Plaintiff "from adhering to the Policy on Nondiscrimination with respect to religion and sexual orientation" and requiring Defendants to recognize CLS as a registered student organization, together with attorneys' fees and other relief. It has named as Defendants Hastings' Dean and Chancellor, its Director of Student Services, and the members of its Board of Directors, in their official capacities. *Id*. ¶¶2.2-2.4.

## ARGUMENT

## I.

## HASTINGS' DIRECTORS ARE IMPROPERLY NAMED AS DEFENDANTS.

CLS has improperly named as Defendants all ten members of Hastings' Board of Directors, in their official capacities. Whether parties are properly named as defendants in an *Ex parte Young* case turns primarily on whether they have authority to *enforce* the law as to which plaintiffs seek declaratory or injunctive relief, not on whether they enacted the law. This Court can provide complete redress for Plaintiffs' claims by granting injunctive relief against Hastings' Dean and Director of Student Services, who are charged with the responsibility of enforcing Hastings' Policy on Nondiscrimination.

As a general rule, whether parties named in their official capacities are proper defendants in a suit "is really the common denominator of two separate inquiries: first, whether there is the requisite causal connection between their responsibilities and any injury that the plaintiffs might suffer, such that relief against the defendants would provide redress;

and second, whether our jurisdiction over the defendants is proper under the doctrine of *Ex parte Young*, 209 U.S. 123, 157, 52 L. Ed. 714, 28 S. Ct. 441 (1908), which requires 'some connection' between a named state officer and enforcement of a challenged state law." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (citations omitted) (state attorney and county prosecutor were proper defendants in action challenging state statute requiring parental consent for abortions because an injunction against either "could redress plaintiffs' alleged injuries" with regard to the risk of criminal prosecution for non-compliance with the statute). As to the latter, "'This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Id.* (quoting *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)).

Merely enacting a potentially unconstitutional policy is not sufficient, in and of itself, to subject a legislator or other policymaker to suit. As Judge Conti observed in *NASD Dispute Resolution v. Judicial Council of Cal.*, 232 F. Supp. 2d 1055 (N.D. Cal. 2002),

> The creation of a generally applicable, and in most circumstances constitutional, policy cannot, however, be an unconstitutional act sufficient to trigger the applicability of *Ex parte Young*. If the Judicial Council acted unconstitutionally in passing such a policy, it would follow that any legislator or policymaker acts illegally any time he enacts a policy with any invalid application, no matter how valid the policy might be in all other circumstances. In other words, any time a policymaker creates a policy susceptible to an as-applied federal statutory or constitutional challenge, he violates federal law. This would be a rather drastic conclusion. (*Id.* at 1064-65)

Accordingly, "the typical Ex parte Young case involves a suit against the agents who might enforce the law in those potentially unconstitutional circumstances rather than the policymakers responsible for its drafting; the policymaking stage simply does not involve the requisite unconstitutional act that allows an Ex parte Young suit to proceed." *Id.* [4]

Here, while Hastings' Board of Directors enacted the Policy on Nondiscrimination to

---

[4] *See also, e.g., Rounds v. Oregon State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 n.3 (9th Cir. 1999) (in students' First Amendment challenge to university's use of mandatory incidental fees to fund a public interest group to which they objected, "it is apparent from the face of the record that many, if not most, of the individually named defendants lack the requisite causal connection under *Young* and *Taylor*").

1  which CLS objects, its Director of Student Services and Dean are charged with its
2  enforcement, and therefore are the only properly named Defendants.  Hastings' Policies
3  charge the Director of Student Services with approving registered student organizations.
4  Compl. Ex. E at 66 ¶34.10(A)(4).  Likewise, the Policies expressly delegate to the Director
5  of Student Services the responsibility for hearings on the denial or revocation of registration.
6  *Id.* at 67 ¶34.11.  Finally, "[t]he Standing Orders and Bylaws of the Board delegate specific
7  authority to the Dean of the College, including *the full authority and responsibility over the*
8  *administration of academic and student affairs* and business and fiscal operations of the
9  College."  *Id.* at 63 ¶11.00 (emphasis added).  Accordingly, the Directors should be
10 dismissed as Defendants.

## II.

### HASTINGS' NONDISCRIMINATION POLICY DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE.

14  Count III of the Complaint alleges that Hastings' enactment and enforcement of the
15 Policy on Nondiscrimination "forbidding [CLS] to discriminate on the basis of religion or
16 sexual orientation" violates the Establishment Clause of the First Amendment.  Compl. ¶7.2.
17 That claim is entirely without merit.
18  The sole basis CLS stated in its demand letter (*see* Compl. ¶4.4) for its contention that
19 Hastings' nondiscrimination policy violates the Establishment Clause was that it "prefers
20 religious sects that condone homosexual conduct over more orthodox religious sects that
21 believe homosexual conduct is impermissible."  The Supreme Court, however, has
22 repeatedly rejected Establishment Clause claims premised on the fact that the law or
23 regulation at issue happens to coincide with one religion's tenets or beliefs.  In *McGowan v.*
24 *Maryland*, 366 U.S. 420 (1960), the Court rejected an Establishment Clause challenge to
25 Sunday Closing Laws even though their prohibition of most work on Sunday coincided with
26 the Christian day of rest.  In upholding these laws, the Court stated:

27  [T]he 'Establishment' clause does not ban federal or state regulation of conduct
    whose reason or effect merely happens to coincide or harmonize with the tenets
28  of some or all religions.  In many instances, the Congress or state legislatures

conclude that the general welfare of society, wholly apart from any religious considerations, demands such regulation. Thus, for temporal purposes, murder is illegal. And the fact that this agrees with the dictates of the Judaeo-Christian religions while it may disagree with others does not invalidate the regulation. So too with questions of adultery and polygamy. The same result could be said of theft, fraud, etc., because those offenses were also proscribed in the Decalogue. (*McGowan*, 366 U.S. at 442)

The Court upheld the same principle in *Harris v. McRae*, 448 U.S. 297 (1980), in which several Medicaid recipients alleged that the Hyde Amendment, which severely limited the use of federal funds to reimburse the cost of abortions under the Medicaid program, violated the Establishment Clause because it was consistent with the doctrines of the Roman Catholic Church condemning abortion. The Court squarely rejected the argument that the funding restrictions violated the Establishment Clause because they happened to be consistent with the religious tenets of the Roman Catholic Church:

> Although neither a State nor the Federal Government can constitutionally pass laws which aid one religion, aid all religions, or prefer one religion over another, it does not follow that a statute violates the Establishment Clause because it happens to coincide or harmonize with the tenets of some or all religions. That the Judaeo-Christian religions oppose stealing does not mean that a State or the Federal Government may not, consistent with the Establishment Clause, enact laws prohibiting larceny. (*Harris*, 448 U.S. at 319 (internal citations omitted))

The Court again reaffirmed this principle in *Bob Jones University v. U.S.*, 461 U.S. 574 (1983). There, Bob Jones University argued that the IRS's policy of denying tax exemption status to colleges with racially discriminatory admissions policy violated the Establishment Clause "by preferring religions whose tenets do not require racial discrimination over those which believe racial intermixing is forbidden." *Id.* at 604 n.30. The Court readily dismissed this claim in a footnote, holding that "a regulation does not violate the Establishment Clause merely because it happens to coincide or harmonize with the tenets of some or all religions." *Id.*[5]

---

[5]The Ninth Circuit has consistently recognized this well-established principle. *See Alvarado v. San Jose*, 94 F.3d 1223, 1232 (9th Cir. 1996) ("[M]ere consistency with or coincidental resemblance to a religious practice does not have the primary effect of advancing religion"); *Brown v. Woodland Joint Unified School Dist.*, 27 F.3d 1373, 1380 (9th Cir. 1994) ("a practice's mere consistency with or coincidental resemblance to a religious practice does not have the primary effect of advancing religion"); *Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1539 (9th Cir. 1985) ("The first amendment is not
(continued . . . )

1   These cases are controlling here. CLS's claim that Hastings' nondiscrimination policy
2   violates the Establishment Clause because it "prefers" religions which do not discriminate
3   against gays is no different than the claim in *Bob Jones* that the IRS's policy against racial
4   discrimination practices was impermissible because it "preferred" religions which did not
5   condone racial discrimination. Indeed, if CLS's claim were to be accepted, literally
6   thousands of substantially identical nondiscrimination policies across the country—not to
7   mention the federal, state and local laws they implement—would be unconstitutional. That
8   is not, and cannot be, the law.

### III.

### THE NONDISCRIMINATION POLICY IS NOT VOID FOR VAGUENESS.

In Count IV of the Complaint, CLS alleges that by adopting the Nondiscrimination Policy "that fails to provide [CLS] with fair notice as to whether or not its leadership and membership practices comply with the nondiscrimination requirement and tasking University officials with enforcing the Policy on Nondiscrimination without providing criteria or guidelines to govern its enforcement," Defendants have violated its right to due process. Compl. ¶8.2. That claim that the Policy is somehow void for vagueness is a sham: Defendants know very well from the plain language of the Policy that it prohibits the very discrimination that they wish to engage in, as their own Complaint concedes.

"A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited. Thus, the Fifth Amendment due process clause requires a statute to be sufficiently clear so as not to cause persons 'of common intelligence . . . necessarily [to] guess at its meaning and 'to differ as to its application.'" *United States v. Makowski*, 120 F.3d 1078, 1080 (9th Cir. 1997) (citations omitted); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). However, where, as here, challenged regulations are clear on

---

( . . . continued)
violated merely because particular governmental activity 'happens to coincide or harmonize with the tenets of some or all religions'") (internal quotations omitted).

their face, a facial due process challenge must fail. *E.g., Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044, 1046, 1056 (9th Cir. 2003) (school district's policy prohibiting distribution of any flyers of a "commercial, political or religious nature" was not vague "because the regulations are sufficiently clear that persons of ordinary intelligence can determine what is prohibited"); *United States v. Makowski*, 120 F.3d at 1080 (criminal statute prohibiting willful injury, intimidation or interference with any person because of his race, color, religion or national origin not void for vagueness).

Here, CLS's void-for-vagueness claim fails on the face of the verified Complaint itself. CLS *admits* that it is under no misapprehension as to what the University's Policy on Nondiscrimination means or how it would be enforced. CLS alleges that Hastings' Policy "requires [it] to open its membership and officer positions to all students regardless of religion or sexual orientation." Compl. ¶4.9; *see also id.* ¶3.19 ("The policy precludes student organizations from considering religion or sexual orientation in the selection of officers or members"). CLS also acknowledges that it objects to the Policy precisely on the ground that it "forbid[s] [it] to discriminate on the basis of religion or sexual orientation." *Id.* ¶4.12; *see also, e.g., id.*¶4.2 (CLS intends to "consider religion and sexual orientation in the selection of officers and members"). Thus, the Policy is not vague in the slightest. Moreover, of course, it would be astounding if Hastings' Policy on Nondiscrimination *were* void for vagueness, since it is nearly identical to similar policies written into federal, state and local laws, and adopted by thousands of institutions across the country. *See Murphy v. Shaw*, 195 F.3d 1121, 1129 (9th Cir. 1999), *rev'd on other grounds*, 532 U.S. 223 (2001) ("the challenged regulations are the sort that every prison enforces in order to maintain order").

## IV.
### HASTINGS' NONDISCRIMINATION POLICY DOES NOT VIOLATE EQUAL PROTECTION.

In Count VI of the Complaint, CLS seeks to state a claim for violation of the Equal Protection Clause. The sole charging allegation in that claim reads in its entirety as follows:

>      By enacting and enforcing the Policy on Nondiscrimination forbidding HCF to discriminate on the basis of religion or sexual orientation, refusing to recognize HCF's constitutional right to an exemption from said policy, withholding from HCF the status and benefits of a registered student organization, and engaging in direct and subtle forms of retaliation against HCF and its members, Defendants have denied and will continue to deny the equal protection of the laws guaranteed to HCF and its members as a religious association by the Fourteenth Amendment to the United States Constitution. (Compl. ¶10.2)

To state a claim for violation of equal protection in this context, CLS must show (1) that it was treated differently from others similarly situated, (2) based on its membership in a protected class or exercise of a fundamental right, and (3) that Hastings acted with an intent to discriminate against it. *See, e.g., Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). CLS has not pled these basic elements. Accordingly, Count VI fails to state a claim for relief under the Equal Protection Clause.

### A.   Hastings Has Not Treated CLS Differently Than Any Other Registered Student Organization.



*First*, CLS cannot show that it was treated differently from other similarly situated student organizations. Unlike equal protection cases involving laws that draw explicit classifications on the basis of race, religion or other protected categories, Hastings' Policy draws no such distinctions: it applies equally to *all* student groups, regardless of the content or viewpoint of their speech. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Green v. Tucson*, 340 F.3d 891, 896 (9th Cir. 2003) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). But far from pleading that Hastings treated it *differently* from other similarly situated student groups, CLS's real complaint is that it was *not* treated differently. *See also Lee v. Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("the gravamen of plaintiffs' complaint is that defendants failed to treat [CLS] differently from others similarly situated"). Because CLS does not allege that Hastings has applied its Policy differently to it than it has to other similarly situated student groups, it has not stated an equal protection claim. "[I]n order for a state action to trigger equal protection review at all, that action must treat

1  similarly situated persons disparately." *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir.
2  2002); *Christian Gospel Church, Inc. v. San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990)
3  ("In order to prevail, the Church must make a showing that a class that is similarly situated
4  has been treated disparately") (citations omitted).

### B.  CLS Has Not Alleged That Hastings Acted With Discriminatory Intent.

*Second*, CLS has not pled another essential element of its equal protection claim: that Hastings took any of the actions alleged with the *intent* to discriminate against it. "The absence of proof of discriminatory intent forecloses any claim that the official action challenged . . . violates the Equal Protection Clause of the Fourteenth Amendment." *Hispanic Taco Vendors v. Pasco*, 994 F.2d 676, 680-81 (9th Cir. 1993), *quoting City of Memphis v. Greene*, 451 U.S. 100, 119 (1981); *see also Barren*, 152 F.3d at 1194 ("To state a claim under 42 U.S.C. §1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class").

"Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Lee v. Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). In *Lee*, plaintiff alleged that defendants' failure to provide for sufficient training or to implement other procedures to safeguard the rights of mentally disabled persons amounted to deliberate indifference to their rights and denied them equal protection. The district court dismissed the claim, and the Ninth Circuit affirmed, holding that plaintiff's failure to plead discriminatory intent was fatal to the claim:

> With respect to the discriminatory purpose element of their equal protection claim, plaintiffs plead only that defendants knowingly or with deliberate indifference to the rights of the mentally disabled adopted facially neutral policies of inaction that have had a discriminatory impact on disabled persons. Plaintiffs failed to allege that defendants' acts or omissions were motivated by discriminatory animus toward the mentally disabled as a protected class. (*Id.* at 687)

Far from a mere technicality, that omission was critical:

"'Discriminatory purpose'" . . . implies more than intent as volition or intent as

awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of', not merely in spite of, its adverse affects upon an identifiable group." (*Id.* (citations omitted))

Here, likewise, CLS has not pled that Hastings adopted or enforced its Policy, or denied it an exemption from that Policy, with the intent of discriminating against it. On that additional ground, it has failed to state a claim for violation of the Equal Protection Clause.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the members of Hastings' Board of Directors as Defendants, and should dismiss Counts III, IV and VI of the Complaint for failure to state a claim upon which relief can be granted.

DATED: December 20, 2004.

Respectfully,

HOWARD RICE NEMEROVSKI CANADY
   FALK & RABKIN
A Professional Corporation

By: _____/s/_____
   ETHAN P. SCHULMAN

Attorneys for Defendants

WD 122004/F-160410001/Y1/1187875/v2