1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTIAN LEGAL SOCIETY CHAPTER OF UNIVERSITY OF CALIFORNIA, HASTINGS COLLEGE OF THE LAW, a/k/a HASTINGS CHRISTIAN FELLOWSHIP, a student organization at University of California, Hastings College of the Law,<br><br>Plaintiff,<br><br>v.<br><br>MARY KAY KANE, et al.,<br><br>Defendants. | No. C 04 4484 JSW<br><br>Action Filed: October 22, 2004<br><br>JOINT STIPULATION OF FACTS FOR CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>Date:     December 2, 2005<br>Time:    9:00 a.m.<br>Judge:   Hon. Jeffery S. White |

COME NOW Plaintiff Christian Legal Society Chapter of the University of California, Hastings College of the Law a/k/a Hastings Christian Fellowship and Defendants Mary Kay Kane, *et al.* and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56-2 and this Court's Standing Orders, enter their Joint Stipulation of Facts for Cross-Motions for Summary Judgment as follows.

## THE PARTIES

1.     Plaintiff Christian Legal Society at the University of California, Hastings College of the Law ("Plaintiff" or "CLS") is an unincorporated student organization made up of students attending the University of California, Hastings College of the Law ("Hastings") in San Francisco, California.

2.     Hastings is a public law school located in San Francisco, California, and part of the University of California system of schools.  *See* 6/6/05 Deposition of Mary Kay Kane ("Kane Depo.") at 11-12.

3.     Defendant Mary Kay Kane is the Chancellor and Dean of Hastings.   As Chancellor, her duties consist of overseeing the business side of the campus, including property, holdings, and investments, representing Hastings before the California State Assembly, and acting as the liaison between Hastings and other segments of the University of California.  *See id.* at 11-12.  As Dean, her duties include, *inter alia,* supervising the academic side of the school and generally managing the internal operations of the College.  *See* Kane Depo. at 12-13.

4.     Defendant Judy Chapman is the Director of the Office of Student Services of Hastings.  *See* 6/6/05 Deposition of Judy Hansen Chapman ("Chapman Depo.") at 9.  Her duties include, among others, overseeing the registration of student organizations at Hastings and the enforcement of Hastings' Policy on Nondiscrimination with respect to students and registered student organizations. *See id.* at 11, 95-98.

5.     Defendants Maureen E. Corcoran, Eugene L. Freeland, Carin T. Fujisaki, John T. Knox, Jan Lewenhaupt, James E. Mahoney, Brian D. Monaghan, Bruce L. Simon, John K.

Smith, and Tony West (collectively, Director Defendants) are members of the Board of Directors of Hastings.  The Director Defendants have had no contact with CLS concerning the registered status of CLS, CLS's bylaws, or CLS's refusal to abide by Hastings' Policy on Nondiscrimination.  *See* Pl.'s Supp. Resp. to Def.'s First Set of Interrogs. No. 24. Defendants Kane and Chapman have the exclusive authority to enforce the Policy on Nondiscrimination with respect to registered student organizations at Hastings.  *See* Kane Depo. at 67.  Decisions by Defendants Kane and Chapman concerning the registration of student organizations are not subject to appeal to the Director Defendants. *See id.* at 67-68.

## REGISTRATION OF STUDENT ORGANIZATIONS AT HASTINGS

6.   Hastings permits student organizations to register with its Office of Student Services. *See* Kane Depo. at 62-63, Exhibit 1.

7.   During the 2004-2005 academic year, approximately sixty (60) student organizations registered with Hastings. *See* Chapman Depo. at 92; First Amended Verified Complaint ("FAC"), Ex. C.  A copy of a list of these organizations is attached as Exhibit A. Of these sixty (60) organizations, three (3) were religious in nature:  Hastings Association of Muslim Law Students, Hastings Jewish Law Students Association, and Hastings Koinonia. *See Id.*

8.   Hastings seeks to promote a diversity of viewpoints among registered student organizations, including viewpoints on religion and human sexuality. *See* Kane Depo. at 18, 53.

9.   Student organizations must be registered in order to gain access to the following benefits:

(a)   Use of the Hastings name and logos. *See* Chapman Depo. at 57-58; Kane Depo. Ex. 1 at 21.

(b)   Use of certain bulletin boards in the basement of Snodgrass Hall. *See* Chapman Depo. at 55-56; Kane Depo. Ex. 1 at 6, 63.

(c)   Eligibility for a Hastings organization email address. *See* Chapman Depo.

at 58; Kane Depo. Ex. 1 at 7.

(d)   Eligibility to send out mass emails through Associated Students of the University of California at Hastings ("ASUCH"), *See* Chapman Depo. at 61; Kane Depo. Ex. 1 at 7.

(e)   Eligibility for a student organization account with fiscal services at Hastings. *See* Chapman Depo. at 61; Kane Depo. Ex. 1 at 9.

(f)   Eligibility to apply for student activity fee funding awarded at ASUCH's discretion.[1] *See* Chapman Depo. at 17, 61; Kane Depo. Ex. 1 at 9, 63.

(g)   Eligibility to apply for limited travel funds through the Office of Student Services.[2] *See* Chapman Depo. at 65; Kane Depo. Ex. 1 at 17-18.

(h)   Ability to place announcements in the Hastings Weekly, a weekly newsletter prepared and distributed by the Office of Student Services. *See* Chapman Depo. at 67-68; Kane Depo. Ex. 1 at 13.

(i)   Eligibility to apply for permission to use limited office space at the College. *See* Chapman Depo. at 73; Kane Depo. Ex. 1 at 14.

(j)   Eligibility for the use of an organization voice mailbox for telephone messages. *See* Chapman Depo. at 73; Kane Depo. Ex. 1 at 18.

---

[1]ASUCH receives money to allocate to registered student organizations through a voluntary student activity fee the Hastings student body imposed on itself by a vote and a mandatory student activity fee imposed by Hastings. *See* Exhibit 1 to Kane Depo. at 66; *see also* Kane Depo. at 64.   ASUCH has discretion to allocate student activity fee funds to registered student organizations as it sees fit.   *See* Chapman Depo. at 62.   No College administrator, faculty member or other employee of Hastings approves ASUCH's budget. *See* Chapman Depo. at 62.

[2]The Office of Student Services receives the money to provide travel funds to registered student organizations from vending machine commission monies. *See* Chapman Depo. at 63; *see also* Kane Depo. at 64; Exhibit 1 to Kane Depo. at 17.   The amount of travel funds available each academic year averages between four and five thousand dollars. *See* Chapman Depo. at 64; *see also* Exhibit 1 to Kane Depo. at 17.   In allocating travel funds, the Office of Student Services considers the total number of registered student organizations applying for travel funds, where the student group is traveling, and the expected cost of the travel. *See* Chapman Depo. at 64.   The Office of Student Services attempts to allocate travel funds among all the applicant registered student organizations in an equitable manner. *See* Chapman Depo. at 64.

1

2

(k)   Listing on the Office of Student Services' website and any hard copy lists,

3

including the Student Guidebook and admissions publications, such as the Hastings Bulletin.

*See* Chapman Depo. at 73-75; *id.* Ex. 16 at Doc. No. UCH00363.

4

5

(l)   Participation in the Student Organizations Faire held once a year.[3]   *See*

Chapman Depo. at 76-77.

6

7

(m)   Use of the Student Information Center for distribution of organization

materials to the Hastings community.   *See* Kane Depo. Ex. 1 at 63.

8

9

10.   Registered student organizations are also eligible to apply for permission to use

Hastings' rooms and audio-visual equipment for meetings.   *See* Chapman Depo. at 69-70;

10

11

Kane Depo. Ex. 1 at 13-15, 63.   As discussed below in paragraphs 58, 61, CLS, although not

currently registered, is eligible to apply for permission to do so as well.   *See* Chapman Depo.

12

at 69-70.

13

14

11.   Non-registered organizations also have access to different bulletin boards located

on the College's Campus and may use chalkboards to make announcements.   *See* Chapman

15

Depo. at 55-56.

16

17

12.   As a condition of becoming a registered student organization at Hastings, and

gaining access to the benefits enumerated above, the College requires organizations to

18

19

comply with the College's Policies and Regulations Applying to College Activities,

Organizations and Students ("Policies and Regulations").   *See* Kane Depo. Ex. 1 at 20, 63.

20

A copy of the Policies and Regulations is attached as Exhibit B.

21

22

13.   Among other things, the Policies and Regulations provide that Hastings and the

University of California "neither sponsor nor endorse" registered student organizations.   *See*

23

24

---

25

[3]Each year UC Hastings holds the Student Organizations Faire from 10:00 am to 2:00 pm one day the week after the deadline for registering student organizations.   *See* Chapman Depo., at 76-77.   At the Student Organizations Faire, each registered student organization has a table set up where they hand out materials and meet new students.   *See* Chapman Depo., at 76-77; Haddad Depo., at 85.   The Student Organizations Faire provides an opportunity for registered student organizations to publicize their organization's existence and attract new members.   *See* Chapman Depo., at 76-77; Haddad Depo., at 85.

26

27

28

Kane Depo. Ex. 1 at 3, 62; Kane Depo. at 52-53; Defs.' Resp. to Pl.'s Interrogs. No. 23. Registered student organizations are required to enter into a license agreement in order to use Hastings' name and logos,which provides that the organization "will inform its members and include in all its written materials that [Hastings] does not sponsor the organization nor its activities and that [Hastings] assumes no legal responsibility for the organization, its officers or members, or any of its activities." *See* Kane Depo. Ex. 1 at 3, 63.

14. Among other things, the Policies and Regulations also require registered student organizations to abide by the Policy on Nondiscrimination ("Nondiscrimination Policy"), Section 20.00 of the Policies and Regulations. *See* Chapman Depo. at 28-29; Kane Depo. at 54; *id.* Ex. 1 at 22, 65.

15. The Nondiscrimination Policy provides:

The College is committed to a policy against legally impermissible, arbitrary or unreasonable discriminatory practices. All groups, including administration, faculty, student governments, College-owned student residence facilities and programs sponsored by the College, are governed by this policy of nondiscrimination. The College's policy on nondiscrimination is to comply fully with applicable law.

The University of California, Hastings College of the Law shall not discriminate unlawfully on the basis of race, color, religion, national origin, ancestry, disability, age, sex or sexual orientation. This nondiscrimination policy covers admission, access and treatment in Hastings-sponsored programs and activities. (*See* Kane Depo. Ex. 1 at 65)

16. The Nondiscrimination Policy was adopted in June of 1990 and amended to its current form in June of 2002. Def.'s Resp. to Pl.'s First Set of Interrogs., No. 21. Hastings uses the terms in the Policy, including "sexual orientation" and "religion," according to their common, ordinary meaning. *See* Defs.' Resp. to Pl.'s Interrog. Nos. 4-5; Kane Depo., at 29, 38. Since its adoption in 1990, no student organization at Hastings (except CLS) has ever sought an exemption from the Policy. *See* Def.'s Resp. to Pl.'s Interrog. No. 19.

17. In order to become a registered student organization, a student organization's bylaws must provide that its membership is open to all students and the organization must agree to abide by the Nondiscrimination Policy. *See* Chapman Depo. at 30, 45; Kane Depo.

at 48-50. A student organization's failure to comply with the Nondiscrimination Policy will result in the denial or revocation of the status and privileges of being a registered student organization. *See* Kane Depo. Ex. 1 at 20, 63; Kane Depo. at 66-67.

18. Hastings requires that registered student organizations allow any student to participate, become a member, or seek leadership positions in the organization, regardless of their status or beliefs. *See* Kane Depo. at 49; Chapman Depo. at 29-31. Thus, for example, the Hastings Democratic Caucus cannot bar students holding Republican political beliefs from becoming members or seeking leadership positions in the organization. *See* Kane Depo. at 50.

19. Hastings has never received a complaint that a student organization discriminates on the basis of religion or sexual orientation. *See* Kane Depo. at 30; Chapman Depo. at 98; Defs.' Resp. to Pl.'s Interrog. No. 14.

20. Section 34.11 of the Policies and Regulations provides registered student organizations with an opportunity to request to be heard by the Director of Student Services before facing revocation or denial of registration, loss of privileges or other sanctions for failure to comply with College policies or regulations. *See* Kane Depo. at 65-67; Kane Depo. Ex. 1 at 63; Chapman Depo. at 97-98. No such request has ever been made and no formal hearing has ever occurred. *See id.*

21. A registered student organization may appeal any decision made by the Director of Student Services to the Dean of the College of the Law. *See* Kane Depo. at 67-68; Defs.' Resp. to Pl.'s Interrogs. No. 16. Student organizations may not appeal the decisions of either the Director of Student Services or the Dean of the College of the Law regarding revocation or denial of registration, loss of privileges or other sanctions to the Hastings Board of Directors. *See* Kane Depo. at 68.

## CLS PREDECESSOR STUDENT ORGANIZATIONS PRIOR TO THE 2004-2005 ACADEMIC YEAR

22. From the 1994-1995 academic year to the 2003-2004 academic year, a student

JOINT STIPULATION OF FACTS FOR
CROSS-MOTIONS FOR SUMMARY JUDGMENT

C 04 4484 JSW

organization calling itself either the Hastings Christian Legal Society ("HCLS") or the Hastings Christian Fellowship ("HCF") existed as a registered student organization at Hastings. *See* 7/8/05 Deposition of Dina Haddad ("Haddad Depo.") at 144.

23.   From the 1994-1995 academic year through the 2001-2002 academic year, these organizations used the same set of bylaws. *See* Haddad Depo. at 146-47; *id.* Ex. 43. These bylaws appear to be an old version of the chapter bylaws sent to student chapters throughout the years by the National Christian Legal Society ("CLS-National"), a national group described in more detail in paragraphs 31 - 36, infra. *See* 7/7/05 Deposition of David Nammo ("Nammo Depo.") at 40-41. Despite these groups' use of these bylaws, they were not officially affiliated with CLS-National. *See* Haddad Depo. at 145.

24.   A copy of the bylaws used by HCLS from the 1995-1996 through the 2001-2002 academic years is attached as Exhibit C.

25.   In the 2002-2003 and 2003-2004 academic years, the organization registered using a different set of bylaws. Under the section titled "Membership," these bylaws provided: "HCF welcomes all students of the University of California, Hastings College of Law." *See* Haddad Depo. at 36-38; Haddad Depo. Ex. 37.  These bylaws did not require that those participating in HCF be members of CLS-National.  *Id.*  During these years, HCF did not exclude members on the basis of religion or sexual orientation. *See* Haddad Depo. at 153. A copy of these bylaws is attached as Exhibit D.

26.   During the 2003-2004 academic year, HCF held bi-weekly Bible studies, in addition to a social gathering at Baker Beach, an Easter event in which Hastings students were invited to church service, an Easter basket drive, and a Christmas toy drive. *See* Haddad Depo. at 27-28.   Approximately five (5) to seven (7) students attended these meetings and events. *See* Haddad Depo. at 32.

27.   One participant in these meetings was known by other members of the group to be a practicing lesbian. *See* 7/13/05 Deposition of Isaac Fong ("Fong Depo.") at 31, 37; Haddad Depo. at 41-42. She voluntarily ceased attending HCF's meetings some time in the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fall of 2003. *See* Fong Depo. at 34-35.

28. At least two participants also attended these meetings who held beliefs inconsistent with what CLS considers to be orthodox Christianity. *See* Fong Depo. at 35-37.

29. From the 1994-1995 academic year to the 2004-2005 academic year, there was an average of less than five (5) members of CLS-National participating in HCLS and HCF during any given year. *See* Pl.'s Supp. Resp. To Defs.' Interrogs., No. 8. From the 1994-1995 academic year to the 2004-2005 academic year, a total of thirty-one (31) Hastings students were official members of CLS-National. *See* Pl.'s Resp. To Defs.' Interrogs., No. 8. During the 2002-2003 and 2003-2004 academic years, there were no official members of CLS-National in HCF. *See* Pl.'s Resp. To Defs.' Interrogs., No. 8.

## THE INSTANT LITIGATION

30. At the close of the 2003-2004 academic year, leadership of HCF (as it was then named) passed to three individuals for the 2004-2005 academic year: Isaac Fong (President), Dina Haddad (Vice President), and Julie Chan (Treasurer). *See* Haddad Depo. at 13-14. These individuals assumed leadership informally and no formal vote of the HCF membership was taken to elect them. *See* Haddad Depo. at 49, 79.

31. Over the course of the summer, Ms. Haddad and Mr. Fong decided to officially affiliate their student organization with the national organization known as the Christian Legal Society ("CLS-National"), a nationwide association of Christian lawyers, law students, law professors, and judges that maintains both attorney and law student chapters across the country. *See* FAC ¶ 3.1.

32. CLS-National requires its formally associated student chapters to use a specific set of bylaws, copies of which are sent to any interested student group along with a registration packet containing information and advice as to how to start and maintain a student group. *See* Nammo Depo. at 29-33, 85-86, 94. A copy of these bylaws is attached as Exhibit E.

JOINT STIPULATION OF FACTS FOR
CROSS-MOTIONS FOR SUMMARY JUDGMENT
-9-                                                    C 04 4484 JSW

33.   The required bylaws promulgated by CLS-National for use during the 2004-2005 academic year require any student wishing to become a member or officer to sign a "Statement of Faith." The Statement of Faith provides:

Trusting in Jesus Christ as my Savior, I believe in:

- One God, eternally existent in three persons, Father, Son and Holy Spirit.

- God the Father Almighty, Maker of heaven and earth.

- The Deity of our Lord, Jesus Christ, God's only Son conceived of the Holy Spirit, born of the virgin Mary; His vicarious death for our sins through which we receive eternal life; His bodily resurrection and personal return.

- The presence and power of the Holy Spirit in the work of regeneration.

- The Bible as the inspired Word of God. (*See* FAC, Ex. A)

34.   It is CLS's position that certain conduct including, but not limited to, unrepentant homosexual conduct is inconsistent with the Statement of Faith and provides grounds for barring or disqualifying someone from becoming a CLS member or serving as a CLS officer. *See* FAC ¶3.8; Nammo Depo. at 50-51; *id.* Ex. 27.

35.   Individuals who refuse to sign or affirm the CLS-National's Statement of Faith are not permitted to be CLS members or officers. *See* Haddad Depo., at 96-97; Chapman Depo. Ex. 14 at 1-2. Students with religions that have tenets different from those set forth in the Statement of Faith are barred from membership and leadership positions. *See* Nammo Depo. at 50-51; FAC ¶3.11.

36.   Under CLS-National's required bylaws, only CLS-National members may vote for or remove officers, amend the group's constitution, or stand for election to an officer position. *See* Chapman Depo. Ex. 4 at 2; Fong Depo., at 57.   Any student, however, may attend CLS's meetings and other activities, regardless of their religion or sexual orientation. *See* Haddad Depo. at 38, 97; Fong Depo. at 40-41.

37.   In early September 2004, Ms. Haddad and Mr. Fong applied to the Office of Student Services for travel funds to travel to CLS-National's annual conference. *See id.* at 69-70. On or about September 9, 2004, Ms. Chapman informed Ms. Haddad via email that

the Office of Student Services had set aside $250.00 in travel funds to cover Ms. Haddad and Mr. Fong's expenses associated with attending the conference. *See* Chapman Depo. at 66, 102; Chapman Depo. Ex. 17.

38.   Thereafter, on September 17, 2004, CLS submitted its registration form, license agreement for use of college name and (using the form bylaws sent out by CLS-National) its new set of bylaws to the Office of Student Services. *See* Chapman Depo. at 108; *id.* Ex. 21.

39.   On September 21, 2004, Ms. Chapman informed Mr. Fong via email that CLS's bylaws did not appear to be compliant with the Nondiscrimination Policy and invited him to meet with her to discuss changing them. *See* Haddad Depo. at 83; Chapman Depo. at 100, Ex. 19. A copy of this letter is attached as Exhibit F.

40.   On September 23, 2004, Mr. Fong, Ms. Haddad, and Ms. Chan met with Ms. Chapman to discuss CLS's bylaws. *See* Chapman Depo. at 82; Haddad Depo. at 88. At the meeting, Ms. Chapman informed the students that CLS's bylaws were not compliant with the religion and sexual orientation provisions of the Nondiscrimination Policy and that they would need to be amended in order for CLS to become a registered student organization at Hastings.   In response, Ms. Haddad handed Ms. Chapman a letter prepared by CLS-National's counsel stating that unless Hastings agreed by September 30, 2004, to allow CLS to become a registered student organization, CLS would commence legal action against the College. *See* Haddad Depo. at 99-100; Kane Depo. Ex. 3 at 7.   A copy of this letter is attached as Exhibit G.

41.   On or about October 1, 2004, Hastings informed CLS via a letter that "to be one of our student-recognized organizations, [CLS] must open its membership to all students irrespective of their religious beliefs or sexual orientation." *See* Haddad Depo. at 102; Kane Dep. Ex. 9. A copy of this letter is attached as Exhibit H.

42.   On or about October 11, 2004, Ms. Chapman informed Ms. Haddad via email that the $250.00 in travel funds previously set aside for travel to the CLS-National conference had been withdrawn because of CLS's failure to become a registered student

organization. See Chapman Depo. at 66, 107; see also id. Ex. 20. A copy of this email is attached as Exhibit I.

43.   On or about October 22, 2004, CLS filed the instant lawsuit against Hastings.

## CLS DURING THE 2004-2005 ACADEMIC YEAR.

44.   CLS held weekly Bible-study meetings beginning on August 31, 2004. See Fong Depo. at 47-48; id. at 69; id. Ex. 41; Haddad Depo. at 51. In addition to Bible studies, CLS hosted a beach barbeque, a Thanksgiving dinner, a campus lecture on the Christian faith and the legal practice, several fellowship dinners, an end-of-year banquet during the 2004-2005 academic year, and several informal social activities. See Haddad Depo., Ex. 41 at 1-2; Fong Depo. at 48-52; Haddad Depo. at 122-23. Also, CLS invited Hastings students to attend Good Friday and Easter Sunday church services with the group. See Haddad Depo. Ex. 41 at 1-2; Fong Depo. at 50.

45.   On September 23, 2004, CLS participated in the annual Student Organizations Faire. See Chapman Depo. at 82.

46.   Ms. Haddad, Mr. Fong, and Ms. Chan did not inform those attending CLS meetings in 2004-2005 that they decided to formally affiliate the organization with CLS-National or that they had decided to change the group's name and bylaws until September 28, 2004. See Haddad Depo. at 106-107; Fong Depo. at 67. CLS's officers did not put their decision to change the group's bylaws to a vote. See Haddad Depo. at 102, 106.

47.   Approximately fifteen (15) students attended the September 28, 2004, meeting. See Fong Depo. at 71. Following the meeting, at least four (4) students ceased attending CLS functions. See Fong Depo. at 87. Also, CLS's Treasurer resigned from her position and her membership in CLS in January 2005. See Haddad Depo. at 110; Fong Depo, at 91-92.

48.   Between nine (9) to fifteen (15) Hastings students (including CLS's officers) regularly attended CLS's meetings and activities during the 2004-2005 academic year. See Haddad Depo. at 113. Aside from CLS's officers, one became an official member of CLS-

National during that year by signing the Statement of Faith. *See* Haddad Depo. at 113.

49. During CLS's weekly Bible study meetings in 2004-2005, the meetings typically would open and close with prayer, praise and worship, and include announcements, Bible study, sharing of prayer requests, group prayer, and a time of fellowship. *See* Pl.'s Resp. to Defs.' Interrog. No. 13; Fong Depo. at 42; Haddad Depo. at 123-24. The Bible study was led by one of CLS's remaining officers. *See* Fong Depo. at 47; Haddad Depo., at 124.

50. At no time during the 2004-2005 academic year did any known non-Christian student seek to join CLS as a member, become an officer, or attend any of its meetings. *See* Fong Depo. at 52-53; Haddad Depo. at 125, 126-27.

51. During the 2004-2005 academic year, any attendee or member was welcome to lead the group in prayer, share prayer requests, and otherwise participate in prayer. *See* Haddad Depo. at 124, 129-30; Fong Depo. at 43.

52. During the 2004-2005 academic year, the topic of homosexuality was not discussed at CLS's meetings outside of the September 28, 2004, meeting referenced in paragraph 47 and occasional updates by Ms. Haddad or Mr. Fong concerning the instant litigation. *See* Haddad Depo. at 130; Fong Depo. at 45.

53. The specific language of CLS-National's Statement of Faith was not discussed at these meetings outside of Mr. Fong's or Ms. Haddad's occasional updates concerning the instant litigation. *See* Fong Depo. at 45. While the Statement of Faith was not referenced, the beliefs reflected therein were discussed during CLS's Bible studies.

54. At no time during the 2004-2005 academic year did any known gay, lesbian, or bisexual person student seek to join CLS as a member or officer or attend any of its meetings. *See* Fong Depo. at 52-53; Haddad Depo. at 125, 126-27.

55. CLS-National has expelled one member from membership due to the fact that CLS believed that he held beliefs inconsistent with the Statement of Faith. *See* Nammo Depo. at 53-58.

56. During his deposition, CLS's Director of Membership Ministries and Director of

1   Law School Ministries, who is responsible for coordinating and administering CLS's

2   membership procedures and addressing membership issues, testified that he was unaware of

3   any instance in which a known gay, lesbian, or bisexual person sought to join CLS-National

4   or was expelled from CLS-National. See Nammo Depo. at 22-25, 51-52.

5       57.   CLS is not aware of any instance in which a known gay, lesbian, or bisexual

6   person or non-Christian was expelled from HCLS or HCF from the 1994-1995 through the

7   2003-2004 academic years. Haddad Depo. at 153.

8       58.   Although Hastings informed CLS in October of 2004 that it was free to make use

9   of its facilities for meetings, CLS never requested such use at any time during the 2004-2005

10  academic year. Pl.'s Suppl. Resp. To Def.'s Interrog. No. 6.

11

12                   **CLS DURING THE 2005-2006 ACADEMIC YEAR.**

13      59.   Due to its noncompliance with the Nondiscrimination Policy, CLS is the only

14  organization of which Hastings is aware that is made up of Hastings students that is not

15  registered with the College. See Chapman Depo. at 23-24; Defs.' Resp. To Pl.'s Interrog.,

16  Nos. 15, 18, 19.

17      60.   On or about August 29, 2005, Hastings, upon learning that CLS was continuing

18  to use the Hastings name, informed CLS that it could no longer call itself "Hastings

19  Christian Fellowship" and must remove the name "Hastings" from its name. See Ex J.

20      61.   On or about September 21, 2005, Hastings' General Counsel reiterated Hastings'

21  offer of its facilities for meetings, and stated that CLS could reserve rooms and the patio area

22  on campus for its events. A copy of this email is attached as Exhibit K.

23      62.   On or about September 21, 2005, in response to CLS's requests, Hastings'

24  General Counsel also informed CLS that while it was free to use chalkboards and generally

25  available bulletin boards on the campus to announce its events, CLS did not have permission

26  to use the Student Information Center for distribution of organization materials, nor the

27  Hastings Weekly or ASUCH weekly emails to make announcements. See Ex. L.

28

JOINT STIPULATION OF FACTS FOR
CROSS-MOTIONS FOR SUMMARY JUDGMENT
                                    -14-                              C 04 4484 JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

63.   On or about September 20, 2005, the CLS officers for the 2005-2006 academic year were elected by a formal vote of the CLS membership. *See* Doc. Nos. CLSHAS02188-CLSHAS02194; *see also* Pl.'s Second Supp. Resp. to Defs.' Interrog. No. 7.

64.   To date, there are seven (7) members of CLS for the 2005-2006 academic year, including the three (3) CLS officers. *See* Pl.'s Second Supp. Resp. to Defs.' Interrog. No. 7, 8, and 10.

Stipulated this _____ day of October, 2005.

| | |
|---|---|
| 1 | COUNSEL FOR PLAINTIFF |
| 2 | |
| 3 | Steven H. Aden (DC Bar No. 466777) |
| | (*Lead Counsel*) |
| 4 | Gregory S. Baylor (TX Bar No. 1941500) |
| | Timothy J. Tracey (GA Bar No. 715195) |
| 5 | RELIGIOUS LIBERTY ADVOCATES |
| | OF THE CHRISTIAN LEGAL SOCIETY |
| 6 | 8001 Braddock Rd., Suite 300 |
| | Springfield, VA  22151 |
| 7 | Tel:  (703) 642-1070 |
| | Fax:  (703) 642-1075 |
| 8 | |
| | Timothy Smith (No. 125534) |
| 9 | MCKINLEY & SMITH |
| | A Professional Corporation |
| 10 | 3445 American River Dr., Suite A |
| | Sacramento, CA  95864 |
| 11 | Tel:  (916) 972-1333 |
| | Fax:  (916) 972-1335 |
| 12 | |
| | Steven Burlingham (No. 88544) |
| 13 | GARY, TILL & BURLINGHAM |
| | 5330 Madison Ave., Suite F |
| 14 | Sacramento, CA  95841 |
| | Tel:  (916) 332-8112 |
| 15 | Fax:  (916) 332-8153 |
| 16 | Of Counsel: |
| 17 | Benjamin W. Bull (AZ Bar No. 009940) |
| | Gary S. McCaleb (ZA Bar No. 018848) |
| 18 | ALLIANCE DEFENSE FUND |
| | 15333 North Pima Road, Suite 165 |
| 19 | Scottsdale, AZ  85260 |
| | Tel:  (800) 835-5233 |
| 20 | Fax:  (480) 444-0028 |

COUNSEL FOR HASTINGS DEFENDANTS

Ethan P. Schulman (No. 112466)
Matthew R. Schultz (No. 220641)
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111-4024
Tel:  (415) 434-1600
Fax:  (415) 217-5910

Elise K. Traynum (No. 127965)
General Counsel and Secretary to the Board
HASTINGS COLLEGE OF THE LAW
UNIVERSITY OF CALIFORNIA
198 McAllister St., Mezzanine Level
San Francisco, CA  94102
Tel:  (415) 565-4787
Fax:  (415) 565-4825

COUNSEL FOR DEFENDANT-INTERVENOR OUTLAW

Christopher F. Stoll (No. 179046)
HELLER EHRMAN LLP
333 Bush St.
San Francisco, CA  94104-2878
Tel:  (415) 772-6000
Fax:  (415) 772-6268

Shannon Minter (No. 168907)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 570
San Francisco, CA  94104
Tel:  (415) 392-6257
Fax:  (415) 392-8442

W03 100705-160410001/Y10/1245385/v2

JOINT STIPULATION OF FACTS FOR
CROSS-MOTIONS FOR SUMMARY JUDGMENT

-16-

C 04 4484 JSW

COUNSEL FOR PLAINTIFF

COUNSEL FOR HASTINGS DEFENDANTS

Steven H. Aden (DC Bar No. 466777)
(*Lead Counsel*)
Gregory S. Baylor (TX Bar No. 1941500)
Timothy J. Tracey (GA Bar No. 715195)
RELIGIOUS LIBERTY ADVOCATES
    OF THE CHRISTIAN LEGAL SOCIETY
8001 Braddock Rd., Suite 300
Springfield, VA 22151
Tel: (703) 642-1070
Fax: (703) 642-1075

Timothy Smith (No. 125534)
MCKINLEY & SMITH
A Professional Corporation
3445 American River Dr., Suite A
Sacramento, CA 95864
Tel: (916) 972-1333
Fax: (916) 972-1335

Steven Burlingham (No. 88544)
GARY, TILL & BURLINGHAM
5330 Madison Ave., Suite F
Sacramento, CA 95841
Tel: (916) 332-8112
Fax: (916) 332-8153

Of Counsel:

Benjamin W. Bull (AZ Bar No. 009940)
Gary S. McCaleb (ZA Bar No. 018848)
ALLIANCE DEFENSE FUND
15333 North Pima Road, Suite 165
Scottsdale, AZ 85260
Tel: (800) 835-5233
Fax: (480) 444-0028

Ethan P. Schulman (No. 112466)
Matthew R. Schultz (No. 220641)
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024
Tel: (415) 434-1600
Fax: (415) 217-5910

Elise K. Traynum (No. 127965)
General Counsel and Secretary to the Board
HASTINGS COLLEGE OF THE LAW
UNIVERSITY OF CALIFORNIA
198 McAllister St., Mezzanine Level
San Francisco, CA 94102
Tel: (415) 565-4787
Fax: (415) 565-4825

COUNSEL FOR DEFENDANT-INTERVENOR OUTLAW

Christopher F. Stoll (No. 179046)
HELLER EHRMAN LLP
333 Bush St.
San Francisco, CA 94104-2878
Tel: (415) 772-6000
Fax: (415) 772-6268

Shannon Minter (No. 168907)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 570
San Francisco, CA 94104
Tel: (415) 392-6257
Fax: (415) 392-8442

W03 100705-160410001/Y10/1245385/v2

JOINT STIPULATION OF FACTS FOR
CROSS-MOTIONS FOR SUMMARY JUDGMENT

-16-

C 04 4484 JSW